Flanchet was in the Kingdom, and legally shipped on board of an American vessel, and it is not a case to which an appeal to the comity of this nation can properly be made. It is not a question in which our citizens have the exclusive interest. If comity is to be exercised, it is to be by those directly interested in this particular case. It would be highly gratifying to the Court if the Consuls of the different nations represented here could arrange by comity any differences which may arise between them; but if they do not, and access is had to the Courts, our duty is to administer to them the law. We have treaty stipulations, and it is our duty to regard them; and to render aid in shielding a seaman from performing his contract would be a violation of our obligations to every nation, especially with whom we have treaties.

I am, accordingly, of opinion that the prisoner must be remanded.

October 12, 1858.

## SUPREME COURT.—HABEAS CORPUS.

### IN THE MATTER OF FRANCIS DE FLANCHET.

NOTWITHSTANDING that the 10th Article of the United States Treaty, regarding the arrest of deserters, is binding upon the Hawaiian authorities to make the arrest required, yet, if the party so arrested be brought up on *habeas corpus,* the Court is bound, so far as necessary, to go behind the declaration of the Consul, and inquire into facts of the case for the protection of the party arrested, in his legal rights.

Neither the statute law of 1846, nor the provisions of any of the treaties, require that a warrant should first be issued, upon oath, to validate the arrest of a deserter, upon the requisition of the Consul, unless the deserter were sheltered in a private house.

On appeal from the decision of Chief Justice ALLEN, at Chambers.

Opinion of Justice ROBERTSON.

The facts of this case having been fully referred to in the lengthy and able decision rendered by the Chief Justice, at Chambers, and the circumstances of the case rendering it expedient that the final judgment should be given without delay, I will endeavor to state my opinion as briefly as possible.

The first question raised by the petitioner's counsel is a question of fact. He contends that the testimony in the case is not sufficient to prove a valid and binding contract of shipment between de Flanchet and the Master of the ship "Nassau." Upon this point I am satisfied, after a careful examination of all the evidence, that, at the time de Flanchet entered the U. S. Consulate with Captain Murdock, he did so with the intention of being shipped ; that he voluntarily suffered himself to be enrolled on the articles of the "Nassau," in the manner which is usual in such cases ; that he acted with a fair understanding of the nature and terms of the contract, and freely assented thereto.

The learned counsel, who appears on behalf of the Marshal, contends that the evidence touching the question of contract ought not to have been received, and that the Court is bound to regard the official statement of a foreign Consul, that a party is a deserter and liable to arrest, as entirely conclusive, and not open to be controverted. While I admit that the declaration of the Consul in such a case, accompanied by the exhibition of the proofs prescribed in the 10th Article of the U. S. Treaty, is so far binding upon the Hawaiian authorities as to render it imperative upon them to make the arrest required, I am of the opinion that the argument of the counsel goes too far, and that if a party so arrested feels himself aggrieved, and is brought up on habeas corpus, the. Court is bound, so far as may be necessary, to go behind the declaration of the Consul, and inquire into the facts of the case, for the protection of the party arrested in his legal rights.

Upon the next point made by the petitioner, namely, that there is no proof that de Flanchet quitted the ship without leave, and with the intention not to return, and was therefore

not liable to arrest as a deserter, I think it is proved beyond a doubt that, at the time the requisition was made by the U. S. Consul for the arrest of de Flanchet, he had fully determined not to return on board of his ship. As to what motive or consideration led him to form such a resolution, I think that is of no consequence here. That he had made up his mind to quit service on board of the "Nassau," in contravention of his agreement with Capt. Murdock, and that, in the language of maritime law, *animo derelinquendi*, seems to me manifest by his own statements, and I therefore consider him a deserter in the sense of the maritime law.

But it is contended by the petitioner that, under the operation of the second article of the treaty with France of 26th March, 1846, securing to French subjects in this Kingdom the same protection in regard to their civil rights, their persons and property, as is enjoyed by native Hawaiian subjects, de Flanchet could not be shipped here as a seaman without the consent of the Consul of France, because a native of this Kingdom, by a provision of Hawaiian law, cannot be shipped on board of a foreign vessel without the consent of the Governor of the island where the shipment takes place—I am clearly of opinion that the ground here taken by the learned counsel for petitioner is altogether untenable. That a port regulation of this Kingdom, made expressly to cover native seamen alone, and not in any way affecting the constitutional protection as to civil rights, person or property, guaranteed to Hawaiian subjects, should be considered in any way applicable to French subjects, by reason of the parity clause of the treaty referred to, although an ingenious proposition, appears to my mind utterly fallacious.

Upon the next point, which is based upon certain marine laws of France, and the respect to be paid to those laws within this Kingdom, by the comity of nations, I have merely to say that I entirely concur in the views of the Chief Justice, so elaborately set forth in his decision.

It is further argued on behalf of the petitioner, that de Flanchet is not held in custody by order of any competent judicial authority, not having been arrested in pursuance of any warrant, issued upon sworn application, according to the laws of this Kingdom. When the learned counsel says that the written

requisition, addressed to the Marshal by Mr. Consul Pratt, is not a *warrant of arrest*, although it is so styled in the Marshal's return, and that no foreign Consul in this Kingdom has power to issue such a warrant, I think he is entirely right.  And if it is necessary, in order to the arrest in every case of a deserter from an American ship, that the Marshal, or Sheriff, should first be provided with a warrant of arrest, issued upon sworn application, then de Flanchet was illegally arrested, and ought upon that ground to be discharged.  But I am clearly of opinion that a deserting foreign seaman may, under our present laws, upon proper requisition made in accordance with the treaty stipulations, be arrested without a warrant, unless, perhaps, in the case of such deserter being sheltered in a private house, when it might be necessary formally to sue out a warrant of arrest, on the ground that in that case the rights of other parties would be involved.  The arrest of a deserting foreign seaman, under ordinary circumstances, resembles, in my opinion, the arrest of a party in the act of committing a breach of the peace, or other offense, which may in general be made without a warrant. Neither the statute law of 1846, nor the provisions of any of our treaties, declare it to be necessary, to validate the arrest in such a case as the present, that a warrant should first be issued upon oath ; nor do the restrictive provisions of the fiftieth chapter of the Penal Code, in relation to arrests, apply to this case.

For these reasons, and after a full examination of the matter, I am clearly of opinion that the decision of the Chief Justice ought to be affirmed.

Chief Justice Allen and Justice Ii concurred.

The motion for the discharge of de Flanchet was refused, and he was remanded into the custody of the Marshal, to be held in pursuance of the written requisition of the United States Consul.